UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>GLENCREST HEALTHCARE & REHABILITATION CENTRE, LTD. and FRANK HAYS, as Administrator of the Estate of Sarah Quinn, Deceased,<br><br>    Defendants. | Case No. 21-cv-3653 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, National Fire & Marine Insurance Company, byand through its attorneys, and for its Complaint for Declaratory Judgment against Defendants, GlenCrest Healthcare & Rehabilitation Centre, Ltd., and Frank Hays, as Administrator of the Estate of Sarah Quinn, states as follows:

## NATURE OF THE ACTION

1. This is a declaratory judgment action brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, wherein National Fire & Marine Insurance Company ("National Fire") seeks a declaration that it owes no duty to defend and indemnify under an insurance policy issued to Glen Health & Home Management ("Glen Health") with respect to a lawsuit pending in the Circuit Court of Cook County, *Frank Hays, as Administrator of the Estate of Sarah Quinn v. GlenCrest Healthcare & Rehabilitation Centre, Ltd.,* Case No. 17 L 011002 ("*Hays* Lawsuit").

## PARTIES

2. Plaintiff, National Fire & Marine Insurance Company ("National Fire"), is a Nebraska corporation with its principal place of business at 1314 Douglas Street, Suite 1400, Omaha, Nebraska.

3.  Defendant, GlenCrest Healthcare & Rehabilitation Centre, Ltd. ("GlenCrest"), is an Illinois corporation with its principal place of business at 2451 W. Touhy, Chicago, Illinois.

4.  Defendant, Frank Hays ("Hays"), Administrator of the Estate of Sarah Quinn ("Quinn"), is a citizen of the State of Illinois.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the dispute presented is between citizens of different states. As described above, Plaintiff is a citizen of Nebraska, while Defendants are citizens of Illinois. Further, this action involves the transaction of business within Illinois, where insurance policies were issued to businesses located in Illinois, and a lawsuit pending in Illinois.

6.  This Court has general and specific jurisdiction over the Defendants because each are citizens of the State of Illinois, have continuous and systematic contacts with Illinois, and the events, transactions and/or occurrences described herein have a substantial nexus to and/or occurred in Illinois.

7.  Venue is proper pursuant to 28 U.S.C. § 1391 as the Defendants reside within this District and a substantial part of the events, transactions, and/or occurrences that give rise to the claims asserted herein occurred in this District. The insurance policies were issued to Glen Health and its related entities that are listed as named insureds under the policies, including GlenCrest, in Illinois, and the subject lawsuit is pending in this District.

## FACTUAL ALLEGATIONS

8.  National Fire issued a Senior Care Primary Liability policy with a policy period from June 1, 2015 to June 1, 2016 ("15-16 Policy") to Glen Health. GlenCrest is listed as an additional named insured under the 15-16 Policy. The 15-16 Policy contains a Professional

2

Liability-Senior Care coverage form and a Commercial General Liability-Senior Care Coverage form. The 15-16 Policy also contains a Self-Insured Retention Endorsement ("SIR"). The relevant 15-16 Policy provisions provide:

**Professional Liability**
**Senior Care**

\* \* \* \*

**Section IV.  ADDITIONAL CONDITIONS (see all Conditions in Section III – CONDITIONS of COMMON POLICY PROVISIONS)**

**A.  Duties in the Event of an "Incident", "Claim" or "Suit"**

\* \* \*

You and any other involved "insured" must:

\* \* \*

    iv.  Cooperate with us in the investigation, settlement or defense of the "claim" or "suit" and

\* \* \* \*

**Commercial General Liability**
**Senior Care**

\* \* \* \*

**Section IV.  ADDITIONAL CONDITIONS (see all Conditions in Section III – CONDITIONS of COMMON POLICY PROVISIONS)**

**A.  Duties in the Event of an Offense, "Occurrence", "Claim" or "Suit"**

    4.  You and any other involved "insured" must:

\* \* \*

    c.  Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and
    …

\* \* \* \*

**SELF INSURED RETENTION**

\* \* \*

**This endorsement modifies insurance provided under the following:**

\* \* \*

**SENIOR CARE PRIMARY LIABILITY POLICY**

**SCHEDULE**

1. **Self- Insured Retention Amount**
   a. Each "incident", "occurrence" or offense     $250,000 for GlenShire & $100,000 for other locations
   b. Aggregate     $Not Applicable
   c. Maintenance Retention     $Not Applicable

2. **Third Party Claims Administrator**
- Sedgwick

\* \* \*

**Section I.**     **SELF INSURED RETENTION**

A. Our total liability under this policy is limited as described in Sections **III – LIMITS OF INSURANCE** of the attached Coverage Parts. These limits will apply in excess of the amounts scheduled in Item **1.a.** of the Schedule above.

B. We shall have no obligation for, or any responsibility to pay, any amounts owed by any "**insured**" within the Self-Insured Retention. Our obligations under this policy shall only attached once you have satisfied these terms and have paid the Self-Insured Retention amount, which is a condition precedent to coverage in this policy.

\* \* \* \*

**Section II.**     **DEFENSE PROVISIONS OF THE SELF INSURED RETENTION:**

A. You are obligated to provide for the defense, investigation, and settlement of any offense, "occurrence", "**claim**" or "**suit**" that may be covered by this policy and is within the Self-Insured Retention. You are also obligated to accept and pay any reasonable settlement offer within the Self-Insured Retention. Once the Self-Insured Retention has been satisfied pursuant to the terms and conditions of this endorsement, your obligations terminate and we will assume the defense pursuant to the terms and conditions of this policy.

B. If "**defense expenses**" erode the limits of this Self-Insured Retention, no "**insured**" or "**third party claims administrator**" may incur any "**defense expenses**" that exceed the amount of the Self-Insured Retention without or prior written consent.

C. We shall have the right, but not the duty to participate in:

1. The investigation of any "**incident**", "**occurrence**", or offense to which this policy may apply, and

2. The defense, investigation or settlement of any "**claim**" to which this policy may apply.

In such an event, you must fully cooperate with us.

**D**. We shall have the right, but not the duty, at our own expense and with counsel of our choice, to assume control of the defense and/or settlement of any "**claim**" or "**suit**". Upon our written request, you shall tender such portion of the Self-Insured Retention as we consider necessary to complete the settlement or defense of this "**claim**" or "**suit**."

\* \* \*

9. Pursuant to the terms of the Policies' SIR Endorsements, GlenCrest, as a named insured, is responsible for all amounts owed within the SIR, requiring it to pay $100,000 in Self-Insured Retention. Pursuant to the SIR, GlenCrest is "obligated to provide for the defense, investigation, and settlement of any offense, 'occurrence', '**claim**' or '**suit**' that may be covered by this policy and is within the Self-Insured Retention. [GlenCrest is] also obligated to accept and pay any reasonable settlement offer within the Self-Insured Retention."

10. GlenCrest's obligations under the Policies' SIR Endorsements apply to both defense costs and damages.

11. The respective SIR amounts apply separately to each incident, each occurrence, each offense, and each event with no applicable aggregate amount. National Fire has no obligation under the Policies unless and until the SIR amount has been satisfied by GlenCrest for the incident, occurrence, offense, or event, as the Policies provide "We shall have no obligation for, or any responsibility to pay, any amounts owed by any '**insured**' within the Self-Insured Retention. Our obligations under this policy shall only attach once you have satisfied these terms and paid the Self-Insured Retention amount, which is a condition precedent to coverage in this policy."

12. Pursuant to the 15-16 Policy, as a condition to coverage, GlenCrest owes an obligation to cooperate in the defense, settlement and investigation of the *Hays* Lawsuit.

13. Pursuant to Illinois law, under the Policies, GlenCrest, as an additional named insured, owed National Fire a duty of good faith.

5

14. This action arises out of the *Hays* Lawsuit. Hays filed his lawsuit on October 30, 2017, arising from Quinn's death on November 10, 2015, alleging claims against GlenCrest, Vivek Gupta, M.D. and Christine Adique, N.P. for violation of the Nursing Home Care Act, Negligence, Wrongful Death and Survival, alleging that GlenCrest failed to meet the standard of care with respect to Quinn.

15. Pursuant to the Self-Insured Retention Endorsement in the National Fire policy, GlenHealth was required to provide for the defense, investigation and settlement of the *Hays* Lawsuit falling within the $100,000 self-insured retention.

16. GlenCrest retained the law firm of Langhenry Gillen Lundquist ("Langhenry") to defend it in the *Hays* Lawsuit.

17. GlenCrest, through Langhenry, filed its Appearance and Jury Demand in the *Hays* Lawsuit on November 30, 2017.

18. GlenCrest, through Langhenry, filed its Answer to Hays' Complaint on August 31, 2018. In that Answer, GlenCrest denied all of the material allegations of Hays' Complaint.

19. Hays initially answered 213 witness interrogatories on May 7, 2019, at which time Hays identified Eduardo Naverrete, MD as an independent expert witness and did not identify any controlled expert witnesses.

20. During the course of its representation of GlenCrest in the *Hays* case, Langhenry regularly apprised National Fire of the status of the case. In those reports, Langhenry advised National Fire that GlenCrest provided proper care to Quinn and that Hays' claims against GlenCrest were defensible.

21. GlenCrest identified numerous fact witnesses in the case in discovery, including Janice de la Rena, RN, Chona Luis, RN, Roselle Yu, RN, Aylmer Oporto, RN, Evelyn Ellison, RN, Latrice Mular, RN, Leo Labrado, RN, Imelda Garcia, RN, and numerous independent expert

6

witnesses, specifically Eduardo Naverrete, MD, Vivek Gupta, MD, Christine Aduque, NP and Brian Fillipe, NP.

22. As the *Hays* Lawsuit involved allegations of a breach of the standard of care, expert witnesses are critical to the case.

23. Langhenry also retained an expert witness, Richard Viglione, M.D., who reviewed the relevant medical records and all of the depositions taken in the case. Dr. Viglione opined on Hays' allegations, including he generally disagreed with Hays' claims and was supportive of the care and treatment of Quinn by the staff at GlenCrest; he opined that the wounds Quinn developed were unpreventable and disagreed with the assertion that Quinn suffered from severe malnutrition or protein starvation; he explained that, historically, serum proteins such as albumin have been widely used to determine patient nutritional status, however, those laboratory markers are not reliable by themselves when an individual is in a chronically inflamed state and immunocompromised – a factor ignored by Hays, and that in Quinn's case, her albumin was decreased because of her chronically inflamed state, which resulted in fluid seeping into the tissue/anasarca.

24. On January 28, 2020, the court entered an order requiring Hays to disclose controlled expert witnesses by June 10, 2020 and GlenCrest to disclose controlled expert witnesses by July 10, 2020. Hays never sought relief from that order or requested an extension of time to disclose experts.

25. Pursuant to Illinois law, specifically Illinois Supreme Court Rule 218(c), the court's case management orders control the subsequent course of the action unless modified, and that "[a]ll dates set for the disclosure of witnesses, including rebuttal witnesses, and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates that trial will commence, unless otherwise agreed by the parties."

7

26. On September 29, 2020, attorney Charles Silverman ("Silverman") filed an additional appearance for GlenCrest. At all times alleged herein, Silverman was acting as a duly authorized agent for GlenCrest. On October 27, 2020, Langhenry filed a motion for substitution of counsel to have Silverman appear in its stead, which the court granted on November 5, 2020.

27. National Fire objected to GlenCrest having Silverman act as the defense attorney in the *Hays* Lawsuit given his lack of experience in handling such a lawsuit.

28. Despite Silverman being of record in the case for many months, National Fire was provided with no reports from him or anyone else on behalf of GlenCrest during that time as to what had happened in the case, what actions he had taken to protect GlenCrest and National Fire's interests, or how he would plan to defend the case at trial.

29. Attorney Jonathan Lubin ("Lubin") also communicated with National Fire on behalf of GlenCrest regarding the *Hays* Lawsuit. At all times alleged herein, Lubin was acting as a duly authorized agent for GlenCrest.

30. There was a settlement conference in the *Hays* Lawsuit on March 31, 2021. The case did not settle at that time. At that conference, Hays and GlenCrest agreed to waive the jury demand in the case and proceed to a bench trial that Judge Desierto set for May 12, 2021.

31. On April 15, 2021, National Fire sent Silverman an email noting the *Hays* Lawsuit being set for trial and requested a case assessment report to be completed by April 20, 2021 that sought, among other things, expected witnesses that would be called at trial, including expert witnesses, as well as a settlement range evaluation, including the potential adverse jury verdict ranges. Silverman failed to respond to that request.

32. As of April 15, 2021, GlenCrest had paid $32,339.86 for the defense of the *Hays* case, and there was $61,227.53 in bills received but not yet paid.

33.

8

34. On April 21, 2021, National Fire received an email from Lubin, copying Silverman, attaching the case assessment report. However, that report merely copied Hays' statement of facts from his pretrial memorandum, failed to include Silverman's assessment of the facts, was contrary to prior defense counsel's analysis, and noted that Hays would call a nursing expert, which was contrary to National Fire's understanding that no expert witnesses had been disclosed prior to the expiration of the expert witness disclosure period.

35. On May 6, 2021, National Fire sent a letter to Lubin, with a copy to Silverman, objecting to GlenCrest, through Silverman, waiving the jury demand in the *Hays* Lawsuit and agreeing to a bench trial despite the fact that discovery was not complete and no experts had been disclosed, and without prior consultation with National Fire. National Fire also objected to the inadequate case assessment report that had been sent by Lubin. National Fire's letter further asked for confirmation that GlenCrest had not agreed to waive the timing of expert disclosures, and noted prior defense counsel had engaged Dr. Viglione who supported the defense of the case, and asked what experts GlenCrest had disclosed and if none, why. Further, the letter noted that the report GlenCrest had provided was woefully deficient in numerous other respects. The letter also advised that National Fire had no idea how Silverman planned to defend the case at trial, including witnesses he planned to call, and the failure to provide these details was a further breach of the Policy provisions, including the cooperation provision, and National Fire reserved its rights to decline coverage. The letter also requested that GlenCrest tender the remaining amount owed under the self-insured retention, and upon receipt of those funds National Fire would assume the defense of the *Hays* Lawsuit.

36. On May 6, 2021, National Fire's counsel sent a separate letter to Silverman expressing concern over Silverman's handling of the *Hays* Lawsuit, including the waiver of the jury demand.

37. On May 10, 2021, National Fire learned that the trial in the *Hays* Lawsuit was being continued. Later that same day, National Fire sent an email to Silverman asking for next steps in the lawsuit. Silverman did not respond to that email.

38. On or about May 12, 2021, the *Hays* Lawsuit was continued for a bench trial to June 30, 2021. At that time, Hays voluntarily dismissed Dr. Gupta from the case.

39. On May 13, 2021, National Fire sent an email to Silverman seeking his trial strategy in the *Hays* Lawsuit, and again asked him about the status of experts. Silverman did not respond to that email.

40. On May 24, 2021, National Fire representatives had a telephone conference with Lubin, discussing their concern that Silverman had not responded to the requests for information for the *Hays* Lawsuit and other cases. On that date, National Fire sent an email to Lubin asking for a report to be prepared for the *Hays* case and specifically requested clarification on the status of the expert disclosures and whether there was an agreement to waive the timing of expert disclosures.

41. On June 3, 2021, National Fire's counsel sent Lubin a letter stating that National Fire was not aware of any experts being disclosed by Hays and the time to do so had expired, assuming there was no waiver of that deadline and confirming Lubin's statement during the May 24, 2021, call that Lubin was going to look into that issue and get back to National Fire.

42. On June 18, 2021, National Fire received an email from Silverman attaching the case assessment and pretrial reports. In that report, Silverman for the first time reported that Hays had an expert, Dr. Carol Ann White, who testified at an evidence deposition and that evidence depositions of experts was ongoing.

43. On June 22, 2021, National Fire sent Silverman an email stating "your reports indicate for the first time that Plaintiff has identified expert witnesses -- when were those expert witnesses disclosed?"

10

44. On June 23, 2021, there was a pretrial conference in the *Hays* Lawsuit. At that time, Hays' counsel and Silverman reported to Judge Desierto that the trial would consist of no live testimony but only evidence depositions that would be provided by Hays, and that GlenCrest would not be calling any witnesses. On that same day, National Fire sent an email to Silverman again asking him about defense experts.

45. On June 24, 2021, National Fire sent an email to Silverman noting the following three issues it needed him to address as soon as possible: (1) what witnesses were being called to assist in the defense of the case at trial, both fact witnesses and expert witnesses, along with a summary of their expected testimony; (2) with respect to Hays' expert disclosures provided by Silverman on June 22, 2021, when those expert witnesses were disclosed, as the disclosures he sent were not dated, and inquiring if the experts were just recently disclosed and if so would he be objecting to Hays' experts testifying in this case due to their not being timely disclosed, and if he was not planning on so objecting, why; and (3) the arguments he planned to make in responding to the testimony of Hays' fact witnesses and their experts at trial, both on the issues of liability and damages. Silverman responded to that email that same day stating with respect to the experts "They were disclosed to prior counsel. It's buried somewhere in the file that was sent to you. I do not have time to dig it up." That representation was false, as no such discussion had been provided to National Fire. National Fire responded to Silverman's email that same day, with an email stating "you represent that the experts were disclosed to prior counsel -- please send me how the experts were disclosed to you -- I am attaching Exhibits 34 and Exhibit 37 you previously sent me relating to these disclosures, which are not dated -- please send me the email or notices served with these disclosures to show when they were served." Silverman responded with an email to National Fire that same day stating:

11

> It is my belief that these names were given to prior counsel as when I heard the names prior to the deposition I remembered them. I do not have time to find it, as I said. I have asked Plaintiff's counsel to forward the prior disclosures to me. If they cannot, I will make the objection and it will be overruled. There was no prejudice in the timeliness of the disclosures, and the Court will not strike their testimony. You may address further inquiries to Mr. Lubin.

Contrary to Silverman's suggestion, there was significant prejudice to the timing of Hays' expert disclosures. Further, no such prejudice had to be shown because the disclosures were made in violation of the court's order and Illinois law.

46. The Policy gave National Fire the right, but not the duty, to assume the control of the defense of a lawsuit, and provided that upon written request, GlenCrest was required to tender such portion of the SIR that National Fire considered necessary to complete the settlement or defense of the lawsuit. GlenCrest failed to tender the remaining amounts owed under the SIR.

47. On June 28, 2021, National Fire advised GlenCrest, through counsel, that it was exercising its right to assume control over the *Hays* Lawsuit, and requested that GlenCrest tender the remaining balance of the SIR to National Fire so that it could complete the defense of the lawsuit. Further, National Fire notified GlenCrest that it had retained attorney John Patton ("Patton") to substitute as counsel for GlenCrest in place of Silverman.

48. Patton filed his appearance on behalf of GlenCrest on June 29, 2021. Also on that date, Patton filed a motion for substitution of judge as a matter of right pursuant to 735 ILCS 5/2-1001(a)(2). Soon after that motion was filed, Hays' counsel sent an email to opposing counsel arguing that GlenCrest's motion for substitution of judge was not properly noticed. Patton responded with an email arguing the motion was properly noticed. Silverman then responded with an email, copying Judge Desierto, siding with Hays' counsel, and contrary to GlenCrest's interests, that GlenCrest's motion was not properly noticed. National Fire's counsel then contacted Lubin and Silverman noting the impropriety of Silverman's actions and confirming that Silverman would cease taking any actions adverse to GlenCrest and National Fire's interests with respect to the *Hays*

Lawsuit. Lubin responded confirming his acknowledgement that Silverman had been replaced as GlenCrest's counsel in that case.

49. The *Hays* Lawsuit was called for trial on June 30, 2021. GlenCrest, through Patton, moved to bar Hays' experts on grounds they had not been timely disclosed. In response, Hays' counsel argued that Silverman had agreed to the late disclosure. Silverman then argued against GlenCrest's position and volunteered to the judge that he in fact had agreed to the late disclosure, despite never informing National Fire of that agreement. There was no benefit to GlenCrest in agreeing to Hays' late disclosure of expert witnesses, and if in fact there was such an agreement, it was directly contrary to GlenCrest and National Fire's interests. On the basis of Silverman's representation that he had agreed to the late expert disclosure, the judge denied GlenCrest's motion to bar Hays' experts.

50. GlenCrest, through Patton, then presented a motion for an extension of the trial date for 90 days to allow time for GlenCrest to disclose expert witnesses. In response, Silverman volunteered that he had informed National Fire months before then that GlenCrest would not be calling any expert witnesses in the case. This was a misrepresentation to the court, as no such communication was made to National Fire until June 24, 2021, less than one week before trial was set to commence. Silverman conceded at the hearing that retaining an expert witness would have been very useful for the defense of the case, but that GlenCrest could not afford to retain an expert, and GlenCrest should not be allowed to name an expert at that time because National Fire knew months ago that no expert witness would be called and did nothing in response. As a result of Silverman's representation that National Fire had been advised months ago no expert witnesses would be called in the defense of the *Hays* Lawsuit, the judge denied GlenCrest's motion for a continuance and further denied its motion to identify an expert witness.

51. GlenCrest's actions set forth above, through Silverman, including failing to present a competent defense to Hays' claims, waving the jury demand, agreeing to Hays' late

13

disclosure of expert witnesses, failing to identify expert witnesses in defense of Hays' claims, and failing to timely and competently report on the status of the lawsuit, were a breach of the cooperation clause in the Policies and its duty of good faith and fair dealing to National Fire.

52. As a direct and proximate result of GlenCrest's breach of the cooperation clause and its duty of good faith and fair dealing, National Fire has suffered substantial prejudice in the *Hays* Lawsuit, including its inability to have a trial by jury, its having to confront Hays' expert witnesses that should have been barred, and in not being permitted to present any expert testimony at trial.

53. GlenCrest has failed to satisfy the conditions of the Self-Insured Retention Endorsement by its failure to satisfy the defense conditions and by its failure to pay the self-insured retention amount.

54. There exists an actual, immediate, and justiciable dispute between National Fire and the Defendants as required under Federal Rule of Civil Procedure 57.

55. Pursuant to Federal Rule of Civil Procedure 57, this Court is empowered, in cases of actual controversy, to make binding declarations of rights, having the force of final judgments.

56. As a result, National Fire seeks a declaration that: (a) National Fire has no obligation under the Policies unless and until the SIR amount has been satisfied by GlenCrest for the *Hays* Lawsuit; (b) National Fire owes no duty to defend GlenCrest in the *Hays* Lawsuit; and (c) National Fire owes no duty to indemnify GlenCrest in the *Hays* Lawsuit.

**PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing, Plaintiff, National Fire & Marine Insurance Company, respectfully requests this Court grant the following relief:

a. declare, adjudge and decree that National Fire owes no duty to defend GlenCrest in the *Hays* Lawsuit;

b.  declare, adjudge and decree that National Fire owes no duty to indemnify GlenCrest in the *Hays* Lawsuit;

c.  award such other relief as is permissible and appropriate, including without limitation all costs, fees, including attorneys' fees, and expenses, available under applicable law; and

d.  for such other and further relief as this Honorable Court may deem just and proper.

        NATIONAL FIRE AND MARINE
        INSURANCE COMPANY

        By:/James K. Borcia_____
            One of Its Attorneys

James K. Borcia
Danita L. Davis
Tressler LLP
233 South Wacker Drive, 61st Floor
Chicago, IL 60606
(312) 627-4000

4840-2153-4193, v. 1