IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>GLENCREST HEALTHCARE & REHABILITATION CENTRE, LTD., and FRANK HAYS, as Administrator of the Estate of Sarah Quinn, Deceased,<br><br>*Defendants*. | No. 21 C 3653<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff National Fire & Marine Insurance Company seeks a declaratory judgment against GlenCrest Healthcare & Rehabilitation Centre, Ltd. ("GlenCrest") and Frank Hays, Administrator of Sarah Quinn's Estate (together, "Defendants"), under the Declaratory Judgment Act, 28 U.S.C. § 2201. (Dkt. 23). In relevant part, Plaintiff seeks a declaratory judgment that it owes no duty to defend or indemnify GlenCrest with respect to an underlying lawsuit ("*Hays*" or the "*Hays* Lawsuit").[1] (*Id.* ¶¶ 1, 59). Now before the Court is GlenCrest's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") for failing to state a claim. (*See* Dkt. 26). For the reasons set forth below, GlenCrest's motion [26] is denied.[2]

---

[1] *See Frank Hays, as Administrator of the Estate of Sarah Quinn v. GlenCrest Healthcare & Rehabilitation Centre, Ltd.*, No. 17 L 011002.

[2] Hays filed a Motion to Dismiss the FAC on March 3, 2022. (Dkt. 29). However, on July 15, 2022, Hays filed an unopposed Motion to Withdraw that motion and sought leave to file an Answer to Plaintiff's Complaint. (Dkt. 41). Accordingly, Hays's Motion to Withdraw [41] is granted, and his Motion to Dismiss [29] is hereby stricken as moot.

1

**BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Plaintiff's FAC, (Dkt. 23) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

**A. The Senior Care Primary Liability Policy**

Plaintiff insured GlenCrest with a Senior Care Primary Liability policy (the "Policy"), which remained in force from June 1, 2015, until June 1, 2016. (Dkt. 23 ¶ 8). As relevant to this case, the Policy contained provisions concerning Professional Liability Senior Care Coverage, Commercial General Liability Senior Care Coverage, and a Self-Insured Retention Endorsement ("SIR"). (*Id.*). Each section required GlenCrest to cooperate with Plaintiff when defending against third-party legal actions (cumulatively, the "Cooperation Clause"). (*Id.* ¶ 8 at 3 ("You and any other involved 'insured' must . . . . [c]ooperate with us in the investigation, settlement or defense of the 'claim' or 'suit.' ")), 4 (mandating GlenCrest to "fully cooperate with" Plaintiff in the investigation or defense of a legal claim); *see also id.* ¶ 12). In addition, the SIR obligated GlenCrest to cover its own legal costs until such expenditures exceeded $100,000, as applicable here. (*Id.* ¶ 8 at 3–5 ("We shall have no obligation for, or any responsibility to pay, any amounts owed by any 'insured' within the [SIR]. . . . You are obligated to provide for the defense . . . of any . . . 'claim' or 'suit' that may be covered by this policy and is within the [SIR]."); *see also id.* ¶ 9). In turn, the Policy required Plaintiff to pay for legal costs beyond the SIR threshold. (*Id.* ¶ 8 at 4 ("Our obligations under this policy shall only attached once you have . . . have paid the [SIR]

amount."); *see also id.* ¶ 11 (explaining same)). Finally, the Policy gave Plaintiff "the right, but not the duty" to assume control over the defense of a lawsuit and required GlenCrest to "tender such portion of the [SIR] as [Plaintiff] consider[ed] necessary to complete the settlement or defense" of the suit upon written request. (*Id.* ¶ 8 at 5; *see also id.* ¶ 46).

**B. The *Hays* Lawsuit**

On or about October 30, 2017, Hays filed a lawsuit concerning the death of Sarah Quinn in the Circuit Court of Cook County. (*Id.* ¶¶ 1, 14). Hays named GlenCrest as a defendant for allegedly breaching the standard of care expected of nursing homes. (*Id.* ¶ 14). Per the terms of the SIR, GlenCrest was required to fund its legal defense in the *Hays* Lawsuit up to the SIR threshold of $100,000, (*id.* ¶ 15), and it retained the law firm of Langhenry Gillen Lundquist ("Langhenry") as defense counsel, (*id.* ¶¶ 16–17). Langhenry regularly communicated with Plaintiff regarding the status of the *Hays* Lawsuit. (*Id.* ¶ 20; *see also id.* ¶ 29 (explaining that GlenCrest's attorney and duly authorized agent, Jonathan Lubin, also communicated with Plaintiff concerning *Hays*)). In addition, through its counsel, GlenCrest filed its Appearance and Jury Demand on November 30, 2017; filed an Answer to the underlying Complaint; issued more than 200 interrogatories to Hays; and identified numerous fact and independent expert witnesses relevant to the case. (*Id.* ¶¶ 17–19, 21). On January 28, 2020, the state court ordered Hays and GlenCrest to disclose controlled expert witnesses by June 10, 2020 and July 10, 2020, respectively. (*Id.* ¶ 24; *see also id.* ¶ 25). Langhenry ultimately retained an expert witness to provide testimony about Sarah Quinn's end-of-life health status and the care she received from GlenCrest. (*Id.* ¶¶ 22–23). By contrast, Hays allegedly failed to disclose controlled expert witnesses by his June 10, 2020, deadline and never formally sought an extension of time to do so. (*Id.* ¶¶ 24, 41–45; *see*

3

*also id.* ¶ 19 (noting that Hays identified an *independent* expert witness on May 7, 2019 but did not identify any *controlled* expert witnesses)).

On or about September 29, 2020, attorney Charles Silverman filed an appearance for GlenCrest in the *Hays* Lawsuit. (*Id.* ¶ 26 (adding that "[a]t all times alleged herein, Silverman was acting as a duly authorized agent for GlenCrest")). Then, on or about October 27, 2020, Langhenry moved the court to allow Silverman to substitute Langhenry as GlenCrest's counsel. (*Id.*). Plaintiff objected to this replacement "given [Silverman's] lack of experience in handling" cases like *Hays*. (*Id.* ¶ 27). Nevertheless, the state court granted Langhenry's motion on November 5, 2020. (*Id.* ¶ 26). Plaintiff alleges that it subsequently received "no reports from [Silverman] or anyone else on behalf of GlenCrest [for many months] as to what had happened in the [*Hays*] case, what actions [Silverman] had taken to protect GlenCrest and [Plaintiff's] interests, or how [Silverman] would plan to defend the case at trial." (*Id.* ¶ 28).

**C. Silverman's Performance as Defense Counsel in *Hays***

The state court held a settlement conference for the *Hays* Lawsuit on or about March 31, 2021. (*Id.* ¶ 30). The parties failed to reach a settlement agreement at that time, but Silverman – without consulting Plaintiff – agreed to waive GlenCrest's jury demand and proceed to a bench trial set for May 12, 2021. (*Id.* ¶¶ 30, 34; *cf. id.* ¶ 17 (stating that Langhenry initially filed a jury demand in *Hays*)). On or about April 15, 2021, Plaintiff emailed Silverman requesting a "case assessment report" by April 20, 2021, still unaware that Silverman waived GlenCrest's jury demand. (*Id.* ¶ 31). More specifically, Plaintiff sought information concerning witnesses expected to be called at trial (including expert witnesses), an evaluation of potential settlement values, and a projected range of adverse jury verdicts. (*Id.*). Although Silverman failed to respond to this request, (*id.*), Lubin provided the report on April 21, 2021, (*id.* ¶ 33). Lubin's report merely

4

regurgitated the statement of facts contained in Hays's pretrial memorandum, lacked any factual analysis from Silverman, and contradicted Langhenry's prior analysis of the case. (*Id.* ¶ 33; *cf. id.* ¶ 20 ("Langhenry advised [Plaintiff] that GlenCrest provided proper care to Quinn and that Hays'[s] claims against GlenCrest were defensible.")). Additionally, Lubin's report stated that Hays intended to call an expert witness – contrary to Plaintiff's understanding that Hays failed to disclose expert witnesses prior to the court-ordered deadline. (*Id.* ¶ 33).

Plaintiff responded to Lubin by letter on May 6, 2021, with copy to Silverman, raising several concerns about the *Hays* proceedings. (*Id.* ¶ 34). Among other things, Plaintiff objected to Silverman's decision to waive the *Hays* jury demand without first consulting Plaintiff, and despite the fact that discovery was ongoing and no experts had been disclosed. (*Id.*). Plaintiff also questioned whether GlenCrest timely disclosed expert witnesses and whether GlenCrest had waived the state court's deadline for Hays's expert disclosures. (*Id.*). Plaintiff further explained that Lubin's case assessment report "was woefully deficient in numerous other respects." (*Id.* (specifying, for example, that Plaintiff "had no idea how Silverman planned to defend the case at trial, including witnesses he planned to call")). Plaintiff asserted that "the failure to provide these details was a . . . breach of the Policy provisions, including the cooperation provision, and [Plaintiff] reserved its rights to decline coverage." (*Id.*). Finally, Plaintiff demanded the balance of money owed under the SIR and stated that it would assume the defense of the *Hays* suit upon receipt of those funds. (*Id.*). Plaintiff sent Silverman a second letter on May 6, 2021, reiterating its concerns over his handling of the underlying suit. (*Id.* ¶ 35).

The *Hays* bench trial was postponed on or around May 10, 2021, and so Plaintiff emailed Silverman "asking for next steps in the lawsuit." (*Id.* ¶ 36). Plaintiff received no response. (*Id.*). Plaintiff next contacted Silverman on May 13, 2021 "seeking his trial strategy in the *Hays* Lawsuit,

5

and again asked him about the status of experts." (*Id.* ¶ 38). Silverman still offered no response to Plaintiff's correspondence. (*Id.*).

Having heard nothing from Silverman, Plaintiff emailed Lubin on May 24, 2021 "specifically request[ing] clarification on the status of the expert disclosures and whether there was an agreement to waive the timing of expert disclosures." (*Id.* ¶ 39). During a telephone conference on that date, Lubin confirmed that he "was going to look into that issue." (*Id.* ¶ 40). Plaintiff also raised concerns about Silverman's repeated failures to communicate with Plaintiff about the *Hays* suit "and other cases" during the May 24 phone call with Lubin. (*Id.* ¶ 39). Plaintiff followed-up with Lubin by letter on June 3, 2021, stating that it "was not aware of any experts being disclosed by Hays" and explaining that "the time to do so had expired, assuming there was no waiver of that deadline." (*Id.* ¶ 40).

Silverman emailed Plaintiff on June 18, 2021 with a case assessment and the pretrial reports. (*Id.* ¶ 41). Silverman therein disclosed – for the first time – that Hays retained expert witnesses to support his claims. (*Id.* (adding that per Silverman, "evidence depositions of experts was ongoing")). Plaintiff responded by email on June 22, 2021, asking <u>when</u> Hays's expert witnesses were disclosed. (*Id.* ¶ 42). Silverman responded to Plaintiff's email by providing copies of Hays's expert disclosures, which were <u>undated</u>. (*Id.* ¶ 44). The following day, on June 23, 2021, the *Hays* litigants attended a pretrial conference where Silverman reported that the defense would call no witnesses at trial. (*Id.* ¶ 43). Plaintiff contacted Silverman on the same date to inquire about GlenCrest's defense experts. (*Id.*; *cf. id.* ¶¶ 22 (alleging that "expert witnesses were critical" to defend against Hays's claims), 23 (describing an expert witness retained by Langhenry prior to Silverman's substitution as counsel)).

6

On June 24, 2021, Plaintiff emailed Silverman again with several questions about his handling of the *Hays* Lawsuit. (*Id.* ¶ 44). Specifically, Plaintiff inquired as to (1) what fact and expert witnesses GlenCrest planned to call at trial, (2) the dates on which Hays disclosed his expert witnesses, (3) whether Silverman planned to object to the admission of those experts' testimony if they were not timely disclosed, and (4) Silverman's strategy for rebutting Hays's fact and expert witnesses. (*Id.*). Silverman responded to Plaintiff's email that day – falsely asserting that Hays's experts were disclosed to prior counsel (i.e., Langhenry) and that the relevant paperwork was "buried somewhere in the file that was sent to [Plaintiff]." (*Id.* ¶ 45 (further noting Silverman's claim that he "d[id] not have time to dig [the requested files] up")). In response, Plaintiff demanded "the email or notices served with [Hays's expert] disclosures to show when they were served. (*Id.*). Silverman maintained that Hays's experts were initially disclosed to GlenCrest's prior counsel and that he "did not have time to find" the information requested by Plaintiff. (*Id.*). Silverman added: "I have asked [Hays's] counsel to forward the prior disclosures to me. If they cannot, I will make the objection and it will be overruled. There was no prejudice in the timeliness of the disclosures, and the Court will not strike their testimony." (*Id.*).

**D. Plaintiff Assumes Control Over the *Hays* Lawsuit**

On June 28, 2021, Plaintiff exercised its right under the Policy to assume control over the *Hays* Lawsuit. (*Id.* ¶¶ 46–47). In keeping with this, Plaintiff demanded the remaining balance of the SIR from GlenCrest and informed GlenCrest that attorney John Patton would replace Silverman as defense counsel moving forward. (*Id.* ¶ 47; *see also id.* ¶¶ 32 (explaining that as of April 15, 2021, GlenCrest's legal fees defending the *Hays* action amounted to $93,567.39, approximately $6,500 under the SIR obligation)). GlenCrest has yet to tender the remaining amount owed under the SIR despite Plaintiff's demand. (*Id.* ¶¶ 46, 54).

On June 29, 2021, Patton filed a motion for substitution of judge as a matter of right pursuant to state law. (*Id.* ¶ 48 (citing 735 ILCS 5/2-1001(a)(2))). Hays's counsel privately emailed Patton and Silverman arguing that the motion for substitution was improperly noticed. (*Id.*). While Patton responded in defense GlenCrest's motion, Silverman sided with Hays – thus arguing *against* GlenCrest's interests – and copied the state court judge on his email. (*Id.*). Plaintiff contacted Lubin and Silverman "noting the impropriety of Silverman's actions" and asserting that Silverman must not further undermine GlenCrest or Plaintiff's interests in the *Hays* case. (*Id.*). In response, Lubin confirmed his understanding that Silverman was no longer serving as GlenCrest's counsel in *Hays*. (*Id.*).

*Hays* went to trial on June 30, 2021. (*Id.* ¶ 49). Patton moved to bar Hays's experts arguing that they had not been timely disclosed. (*Id.*). Hays countered that Silverman "agreed to the late disclosure" on GlenCrest's behalf. (*Id.*). Silverman argued against GlenCrest's position, and in support of Hays, by informing the state court that "he in fact had agreed to the late disclosure, despite never informing [Plaintiff] of that agreement." (*Id.* (adding that "if in fact there was such an agreement, it was directly contrary to GlenCrest and [Plaintiff's] interests")). The state court judge denied GlenCrest's motion to bar Hays's experts "[o]n the basis of Silverman's representation that he . . . agreed to the late expert disclosure." (*Id.*). Patton then moved to postpone the trial so that GlenCrest could have an opportunity to disclose its own expert witnesses. (*Id.* ¶ 50). On this point, too, Silverman argued against Patton. (*Id.*). Silverman conceded that while it would have been "very useful" for GlenCrest to retain an expert, GlenCrest should not be allowed to proffer an expert because Plaintiff "knew months ago that no expert witness would be called and did nothing in response." (*Id.*). Given Silverman's statement – which Plaintiff frames as a misrepresentation to the court – the judge denied GlenCrest's motion for a continuance as well

8

as its motion for identify an expert witness. (*Id.*). On December 10, 2021, the court entered a final judgment order in the *Hays* Lawsuit. (*Id.* ¶ 51). Hays prevailed on all three counts in his Complaint against GlenCrest and was awarded $225,000 in damages, $666,000 in attorneys' fees, and $43,232.13 in expenses. (*Id.*). In total, Hays was awarded $934,232.12. (*Id.*).

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all factual allegations in the amended complaint and draw all permissible inferences in [the plaintiff]'s favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but the plaintiff must allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id.* at 679. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## DISCUSSION

### I. Cooperation Clause

Under Illinois law, "[a]ny condition in [an insurance contract or] policy requiring cooperation on the part of the insured is one of great importance . . . and its purpose should be observed." *Piser v. State Farm Mut. Auto. Ins. Co.*, 938 N.E.2d 640 (Ill. App. Ct. 1st Dist. 2010)

(quoting *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 191 (1991)). Cooperation clauses serve to ensure that insurers receive "fair and complete disclosure" from their insureds, given that insurers otherwise "possess little to no knowledge of the facts surrounding a claim." *E.g.*, *K&S Inv. Prop. Grp. v. Westfield Ins. Co.*, No. 20-cv-2426, 2021 WL 148876, at *3 (N.D. Ill. Jan. 15, 2021) (citing *Piser*, 938 N.E.2d at 647) (internal quotation marks omitted).

To establish a breach of a cooperation clause, the insurer must allege that "(1) the insured breached the duty to cooperate; and (2) the insurer was 'substantially prejudiced' by that failure." *E.g.*, *id.* at *3 (citing *Xtreme Prot. Servs., LLC v. Steadfast Ins. Co.*, 143 N.E.3d 128, 138 (Ill. App. Ct. 1st Dist. 2019)); *see also, e.g.*, *Homeland Ins. Co. of N.Y. v. Health Care Serv. Corp.*, No. 18-cv-6306, 2022 WL 2828752, at *11 (N.D. Ill. July 19, 2022); *Nautilus Ins. Co. v. Russell*, No. 20-cv-50008, 2020 WL 8339361, at *2 (N.D. Ill. Nov. 23, 2020); *Direct Auto. Ins. Co. v. Zaidan*, 2016 IL App (1st) 160538-U, ¶¶ 40–41 (Ill. App. Ct. 1st Dist. 2016); *United Auto. Ins. Co. v. Buckley*, 962 N.E.2d 548, 557 (Ill. App. Ct. 1st Dist. 2011). Critically, whether an insured has breached an insurance policy's cooperation clause is regarded as a question of fact. *See, e.g.*, *Remy v. Travelers Home & Marine Ins. Co.*, No. 11-cv-2564, 2013 WL 2573952, at *8 (N.D. Ill. June 11, 2013); *Buckley*, 962 N.E.2d at 556–57 (explaining that breach of cooperation clause determinations "are made by examining the particular facts of the case at hand"); *Piser*, 938 N.E.2d at 649 (citing *State Farm Fire & Cas. Co. v. First Nat'l Bank & Tr. Co. of Pekin*, 277 N.E.2d 536, 539 (1972)); *see also, e.g.*, *Purze v. Am. All. Ins. Co.*, 781 F. Supp. 1289 (N.D. Ill. 1991); *Zaidan*, 2016 IL App (1st) 160538-U, at ¶ 40 (stating that whether there was a breach "depends on the particular facts of each case"); *Smolinksi v. Allamerica Fin. All. Ins. Co.*, No. 1–13–2029, 2014 IL App (1st) 132029-U, ¶ 17 (Ill. App. Ct. 1st Dist. 2014) (reversing dismissal where there existed a genuine issue of material fact as to violation of the cooperation clause).

The Policy required GlenCrest to "[c]ooperate with [Plaintiff] in the investigation, settlement or defense of [a] 'claim' or 'suit.' " (Dkt. 23 ¶ 8 at 3). In addition, it set forth that if Plaintiff invoked its right to "participate" in the defense, investigation, or settlement of any claim to which the Policy might apply, GlenCrest was required to "fully cooperate" with those efforts. (*Id.* ¶ 8 at 4). Plaintiff claims that GlenCrest's failure to cooperate with its participation in the *Hays* Lawsuit precludes coverage under the Policy. (*Id.* ¶ 52). GlenCrest moves to dismiss this claim in part because the Policy does not "explain what 'fully cooperate' means." (Dkt. 26 at 7). The absence of a particular definition of that phrase is immaterial, however, since courts use the usual tools of contract interpretation in analyzing contracts of insurance – including by assessing the plain meaning of the terms at issue. *Piser*, 938 N.E.2d at 648 (citing *Waste Mgmt.*, 144 Ill. 2d at 191); *see also, e.g.*, *Homeland Ins. Co.*, 2022 WL 2828752, at *6 ("Under Illinois law, an insurance policy, like any contract, is to be construed as a whole, giving effect to every provision.") (internal quotation marks omitted); *Casas v. Am. Serv. Ins. Co.*, 2012 IL App (1st) 113473, ¶ 32 (Ill. App. Ct. 1st Dist. 2012) (explaining same).

GlenCrest otherwise raises several factual and policy arguments that are unsuitable for this early stage of the case. Among other things, GlenCrest asserts that Plaintiff never advised against waiving trial by jury and claims that "there is nothing inherently suspect about a trial by judge over a jury." (Dkt. 26 at 7 (adding that "defendants frequently find themselves questioning the extent of a runaway jury's judgment")). GlenCrest further argues that its decision to "stem the bleed" of attorneys' fees "was likely the right decision." (*Id.*). It also claims that the Policy does not contemplate Plaintiff "pull[ing] coverage altogether" in the event of noncooperation, (*id.*), and that "GlenCrest was as open and honest with National Fire as it could be" in any event, (*id.* at 8). None of these arguments warrant dismissal because they ultimately require an "examin[ation of] the

11

particular facts at hand."[3] *E.g.*, *Buckley*, 962 N.E.2d at 556–57. By contrast, a motion to dismiss tests only the sufficiency, and not the merits, of a complaint. *E.g.*, *Iqbal*, 556 U.S. at 678; *Totty v. Anderson Funeral Home, Ltd.*, 448 F. Supp. 3d 928, 933 (N.D. Ill. 2020) (citing *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990)); *Nautilus Ins. Co.*, 2020 WL 8339361, at *3 (denying motion to dismiss breach of cooperation clause claim where defendant's argument "[went] to factual matters and defenses better addresses at a later point in the case").

Finally, the FAC contains facts that allow a plausible inference that GlenCrest breached the terms of the Cooperation Clause. *E.g.*, *K&S Inv. Prop. Grp.*, 2021 WL 148876, at *3 (citing *Xtreme Prot. Servs.*, 143 N.E.3d at 138). Specifically, Plaintiff highlights that GlenCrest (1) "fail[ed] to present a competent defense to Hays'[s] claims;" (2) waived its jury demand without first consulting Plaintiff; (3) consented to Hays's untimely disclosure of expert witnesses; (4) failed to identify expert witnesses to support of its defense; (5) failed to "timely and competently" report on the status of the underlying case upon Plaintiff's request; (6) undermined Plaintiff's position before the state court in *Hays*; and (7) made misrepresentations to the state court. (*E.g.*, *id.* ¶ 52). Plaintiff claims that it was substantially prejudiced in that GlenCrest's unilateral actions prevented Plaintiff from proceeding to a jury trial; compelled it to confront Hays's expert witnesses "that should have been barred;" and foreclosed it from presenting its own expert testimony at trial. (*Id.* ¶ 53). Together, these allegations suffice to "raise a reasonable expectation that discovery will

---

[3] GlenCrest also supplied the Court with a letter sent to Plaintiff regarding GlenCrest's alleged insolvency and thus its lack of funds to defend the *Hays* suit in the manner desired by Plaintiff. (Dkt. 38; *see also* Dkt. 26 at 2 (referring to the letter as "Exhibit A")). Documents that "a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to her claim." *E.g.*, *Pine Top Receivables of Ill., LLC v. Banco De Seguros del Estado*, No. 12-cv-6357, 2013 WL 677986, at *2 (N.D. Ill. Feb. 25, 2013) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)) (emphasis added). Here, the letter adduced by GlenCrest is not referenced in Plaintiff's FAC, nor are its contents "central to" Plaintiff's claims. The Court therefore will not consider GlenCrest's Exhibit A at this stage of the litigation.

reveal evidence" to support Plaintiff's claims. *E.g.*, *Nautilus Ins. Co.*, 2020 WL 8339361, at *2–3 (citing *Twombly*, 550 U.S. at 555). As such, GlenCrest's motion is denied on this ground.

## II. Duty of Good Faith and Fair Dealing

The duty of good faith and fair dealing exists in every contract as "an implied promise between the parties that they will not do anything to injure the other party's right to enjoy the benefits of the contract." *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 919 (7th Cir. 1997); *see also, e.g.*, *N. Am. Elite Ins. Co. v. Menard Inc.*, 491 F. Supp. 3d 333, 339 (N.D. Ill. 2020) (stating that the duty "ensure[s] that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted"); *Wausau Underwriters Ins. Co. v. Pronto Staffing Servs., Inc.*, No. 11-cv-928, 2011 WL 6016284, at *2–3 (N.D. Ill. Dec. 2, 2011). However, Illinois law generally does not recognize an independent cause of action for breach of the duty of good faith and fair dealing – and applies it, instead, "as an aid in construing a contract under Illinois law." *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013); *see also, e.g.*, *Acheron Med. Supp., LLC v. Cook Med. Inc.*, 958 F.3d 637, 643–44 (7th Cir. 2020) (citing *McArdle*, 705 F.3d at 755); *MSPPR, LLC v. W. Bend Mut. Ins. Co.*, No. 21-cv-5362, 2022 WL 1129221, at *5 (N.D. Ill. Apr. 15, 2022) (citing *McArdle*, 705 F.3d at 755) (dismissing claim for breach of good faith and fair dealing); *JTH Tax LLC v. Rocci*, No. 19-cv-8123, 2021 WL 4844099, at *2 (N.D. Ill. Oct. 17, 2021) (citing *McArdle*, 705 F.3d at 755) (stating that the duty "does not provide a basis for an affirmative claim"); *Heard v. Trax Recs., Inc.*, No. 20-cv-3678, 2021 WL 3077668, at *4 (N.D. Ill. July 21, 2021) (dismissing affirmative claim for breach of good faith and fair dealing with prejudice); *Page v. Alliant Credit Union*, No. 19-cv-5965, 2020 WL 5076690, at *5 (N.D. Ill. Aug. 26, 2020) (same); *Raquet v. Allstate Corp.*, 348 F. Supp. 3d 775,

782 (N.D. Ill. 2018) (same); *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1210 (N.D. Ill. 2015) (same).

However, while the duty of good faith and fair dealing cannot stand as an <u>independent cause of action</u>, it nonetheless "applies generally . . . to the performance . . . of every contract . . . so that a failure to perform . . . a specific duty or obligation <u>under the contract</u> [in good faith] constitutes breach of that contract." *Acheron*, 958 F.3d at 643 (citing Comment to U.C.C. § 1-203) (emphasis added); *see also, e.g.*, *N. Am. Elite Ins. Co.*, 491 F. Supp. 3d at 338–40 (denying motion to dismiss where plaintiff's <u>breach of contract action</u> "relie[d] on an implied duty of good faith"); *LaSalle Bank*, 588 F. Supp. 2d at 858 (denying motion to dismiss <u>breach of contract action</u> based on breach of duty of good faith and fair dealing; explaining that "the Court [must] restrict[] [its] analysis to those facially viable allegations which relate to explicit contract terms"). To establish such a breach, Plaintiff must show that the contract "[1] gave [GlenCrest] discretion in performing an obligation under the contract and [2] [GlenCrest] exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the parties' reasonable expectations." *E.g.*, *N. Am. Elite Ins. Co.*, 491 F. Supp. 3d at 338–40 (citing *LaSalle Bank*, 588 F. Supp. 2d at 857).

Plaintiff asserts that it owes no duty to defend or indemnify GlenCrest in *Hays* because GlenCrest breached its duty of good faith and fair dealing to Plaintiff. (Dkt. 23 ¶ 52). Plaintiff clarified in its Opposition brief that the FAC pleads no "independent claim" for breach of this duty – but that it instead "alleged GlenCrest's breach of its duty of good faith and fair dealing <u>within its declaratory judgment claim on the Policy</u>, which is appropriate." (Dkt. 31 at 9 (emphasis added)). Plaintiff provides no further discussion on this issue and simply concludes that it "in fact alleges that GlenCrest failed to meet its contractual obligations in good faith and fair dealing to Plaintiff." (*Id.*).

14

Nonetheless, viewing the FAC in a light most favorable to Plaintiff, *see Bible*, 799 F.3d at 639, it contains sufficient facts to allege a breach of the implied duty as to the Cooperation Clause for similar reasons as set forth above. Specifically, Plaintiff alleges that GlenCrest had discretion over the handling of the legal defense in *Hays* in that it selected a defense attorney (Silverman), (Dkt. 23 ¶ 26), agreed to a bench trial, (*id.* ¶ 30), and developed its own trial strategy without Plaintiff's input, (*id.* ¶¶ 28, 34, 38, 44), among other things. Plaintiff also plausibly alleges that that GlenCrest exercised its discretion unreasonably or "in a manner inconsistent with the parties' reasonable expectations." *E.g.*, *N. Am. Elite Ins. Co.*, 491 F. Supp. 3d at 338–40. For example, Plaintiff pleaded that Silverman advocated <u>against</u> Plaintiff's positions in state court when Plaintiff took over as defense counsel – including by misrepresenting the facts surrounding the litigation. (Dkt. 23 ¶¶ 49–50, 52). Plaintiff also set forth that Silverman illogically failed to retain an expert witness and failed to object to Hays's untimely disclosure of his experts, further undermining Plaintiff's expectations in the underlying litigation. (*See, e.g.*, *id.* ¶¶ 49–50). Because the FAC adequately pleads that GlenCrest breached its implied duty of good faith and fair dealing as to the Cooperation Clause, GlenCrest's motion is denied on this ground.

### III. Costs, Fees, and Punitive Damages

The Nursing Home Care Act ("Act") is "a comprehensive statute which established standards for the treatment and care of nursing home residents; created minimum occupational requirements for nurses['] aides; and expanded the power of the Illinois Department of Public Health to enforce the provisions of the Act." *Childs v. Pinnacle Health Care, LLC*, 926 N.E.2d 807, 818 (Ill. App. Ct. 2d Dist. 2010) (citing *Harris v. Manor Healthcare Corp.*, 111 Ill.2d 350, 358 (1986)). Nursing home residents may file suit against the owners and operators of their facilities who violate any provision of the Act. *Id.* (citing 210 ILCS 45/3-601). The Act specifies

15

that entities found liable under the Act "shall pay the [plaintiff's] actual damages and costs and attorney's fees." 210 ILCS 45/3-602.

According to Plaintiff, the Policy expressly excludes coverage for "attorneys' fees or attorneys' expenses taxed against [GlenCrest]" as well as for "exemplary and punitive awards." (Dkt. 23 ¶¶ 55–56). As such, Plaintiff seeks a declaration that the Policy excludes all such coverage in relation to the *Hays* Lawsuit. (*Id.*). GlenCrest does not dispute that the Policy contains these exclusionary terms. (*See generally* Dkts. 26, 34). Still, it moves to dismiss the FAC on the grounds that "[a]ttorneys' fees are part of the damages that are owed to a successful plaintiff in . . . actions [brought under the Act]." (Dkt. 26 at 11). GlenCrest's argument elides the point, however, because "[t]he only defendants [directly] liable for damages, costs, and attorney fees under the Act . . . are the owners and licensees of the nursing home." *Eads v. Heritage Enters., Inc.*, 787 N.E.2d 771, 780 (2003) (citing 210 ILCS 45/3-601, 3-602). While GlenCrest might be held liable for the award in *Hays*, the Act says nothing about GlenCrest's insurers, like Plaintiff. Relatedly, Plaintiff does not argue that the Policy exclusion extinguishes Hays's ability to demand payment from GlenCrest in the state court action. Instead, Plaintiff merely contends that the plain terms of the Policy disclaim its own liability for attorneys' costs, fees, and punitive damages arising from the *Hays* Lawsuit.

Finally, GlenCrest asserts that "Plaintiff's interpretation of the contract is against public policy and would lead to unjust results." (Dkt. 26 at 12–13; *see also* Dkt. 34 at 10). Again, such arguments are inapt at this juncture, where the Plaintiff's burden is to establish the sufficiency of the FAC rather than prevail on issues of fact. *E.g.*, *Iqbal*, 556 U.S. at 678; *Totty*, 448 F. Supp. 3d at 933 (citing *Gibson*, 910 F.2d at 1520) ("A motion to dismiss tests the sufficiency of a complaint, not the merits of the case."); *Chubb Indem. Ins. Co. v. 21 E. Cedar, LLC*, No. 10-cv-7111, 2014

16

WL 2619469, at *9 (N.D. Ill. June 12, 2014) (affirming denial of motion to dismiss despite defendants' public policy concerns, because there existed issues of fact). GlenCrest ultimately provides no cognizable reason to dismiss the FAC's allegations concerning the Policy's scope of coverage for costs, fees, and punitive damages.

## CONCLUSION

GlenCrest's Motion to Dismiss [26] is denied. Hays's Motion to Dismiss [29] is stricken as moot for the reasons set forth in his Motion to Withdraw, (Dkt. 41).

_____
Virginia M. Kendall
United States District Judge

Date: August 1, 2022